## SUPREME COURT OF JUDICATURE

OF THE

## STATE OF VERMONT.

ORANGE COUNTY, SEPTEMBER TERM,
A. D. 1802.

*JONATHAN ROBINSON, Chief Judge.*
*ROYALL TYLER,* } *Assistant Judges.*
*STEPHEN JACOB,* }

———

STATE *against* AARON CALDWELL.

The advising a person against whom the sheriff has a precept, and whom he is about to arrest, to draw a line on the ground and to forbid the officer to pass it, and asserting that if the sheriff passed the line and the person killed him, the law was on the person's side, will support an indictment against the adviser for impeding and hindering a civil officer in the execution of his office.

INDICTMENT for impeding and hindering the civil authority.

The indictment charged the defendant with impeding and hindering *Martin Pinney*, in the execution of his office of deputy to the sheriff of *Orange* County, in the levy of a writ of execution against one *William Moore*, at *Thetford*, on the 12th of *August*, A. D. 1801, *contra formam statuti.*

Upon plea of *non cul,* the following facts appeared in evidence to the Jury:

That on the day stated in the indictment, *Pinney,* the sheriff's deputy, had four writs of execution against *Moore.* That as he was approaching to arrest him, the defendant *Caldwell* said to *Moore,* " Draw a line on the ground: draw a line quickly, and if the sheriff steps over it you may knock him down safely. Draw a line, give him warning, and then the law is on your side." *Moore* then drew a line on the ground, and forbade the sheriff to pass over it. As the officer was proceeding towards it, *Caldwell* put his hand lightly on his shoulder, and said, " *Pinney,* you had better stop : *Moore* will injure you ; and if he kills you, the law is on his side." The officer immediately passed the line, and *Moore* knocked him down with a stake, but he recovered himself, and arrested *Moore.*

During the trial it appeared by the witnesses, that the sheriff had not produced his *præcipe,* but that *Moore* had been informed that it was in his possession.

It was insisted by the defendant's counsel, that the officer should have produced his warrant ; that if *Moore* had knowledge of it, this might be sufficient as to him ; but that though a public officer is not obliged to show his warrant to him who is the object of it, he is obliged to show it to strangers, or at least divulge to them that he has a process to execute, before any intent to obstruct him in his official duty can be imputed to them.

State
v.
Caldwell.

A sheriff is not obliged to show his precept, either to the person to be arrested by it, or to the by-standers.

*Sed per Curiam.* The sheriff, as the known and first executive officer of the County, is not obliged to show his warrant to any one. His deputies are by the statutes clothed with the same power, and their names and deputations are put upon the public records of the County, that their appointment to office may be known to all, and all are obliged to obey these officers in carrying into effect the legal orders of government; and when these officers attempt to apprehend any one, the people will conclude they are legally empowered; but here it is apparent the defendant had science of the officer's having a process to execute.

The principal point in defence was, that the whole proof on the part of government amounted to the defendant's giving ill-timed and unsound advice; but to advise to the impeding and hindering an officer in the execution of his duty, was not against the statute; for the words of the statute are, " that if any person or persons shall impede or hinder any officer, judicial or executive, civil or military, under the authority of this State, in the execution of his office."

*Vermont* Stat. vol. 1. c. xxxiii. p 353. s. 5.

But the Court, in their charge to the Jury, said, that as the statute did not, by any circumlocution, define the crime, the intent of the Legislature by the words, " impeding and hindering an officer in the execution of his office," must be found by the Jury upon common law principles. That the obstructing the execution of lawful process had always been considered at common law an offence of a high and presumptuous nature; so much so, that an obstruction to criminal process had formerly been held to make the offender a *particeps* in the felony, if the person to be arrested was charged as a felon. Indeed this

offence strikes at the very foundations of government.

That a question is submitted to their consideration, whether this offence could be committed by a person's advising another to resist an officer charged with the execution of a legal process. But the evidence shows something more than mere advice. The defendant directed *Moore* to draw a line, and forbid the officer to pass it. When the line of defiance was drawn, he put his hand on the officer's shoulder, and cautioned him " not to pass over it," assuring him, " if *Moore* killed him he would be justified by the law." That if the Jury considered that the defendant's conduct impeded or hindered the officer in the execution of his office, they must find him guilty.

The position of the defendant, " that if a person about to be arrested by a sheriff upon a legal process, draw a line on the ground, and forbid the officer to pass over it, the officer passed it at the peril of even his life," might seem to be so absurd as not to require any particular comment; for the Court trusted, that so baneful a doctrine had not, owing to the good sense of the people, been widely disseminated.

That it is true there are cases in which the law allows a man to defend himself even unto the death of the assailant, if he could be repelled only by depriving him of life; such as a burglarious entry into a person's house, a robbery, or when a man is acting in defence of the chastity of his wife or daughter: but in these cases there is no occasion to draw a line, for the law has already drawn a line, beyond which the burglar, the robber, or the ravisher shall not pass with impunity. But when a known officer of government has a legal precept to execute, resistance is a

crime; and if a line is marked on the ground, and the officer warned not to pass over it but at his peril, if death, mayhem, or battery should happen to the officer in consequence of his passing such line, it would be no justification on indictment for the crime. It would not amount to even a palliation, but would rather go to aggravate the offence, by showing that the injury was done after sufficient time to deliberate.

The Jury found the defendant guilty.

*C. Bulkley,* for the State.
*Orimel Hinkley,* for defendant.