The People *v.* Lawton.

— ● ● ● —

## THE PEOPLE *vs.* LAWTON.

It is not erroneous for the court, upon the trial of an indictment, to refuse to charge that the prisoner cannot be convicted upon the testimony of an accomplice, alone, or to charge the contrary; for although the testimony of accomplices, uncorroborated, should be received with great caution, there cannot be any question that if the jury find a verdict of guilty, upon such evidence, the court cannot, for that reason, set it aside.

Under an indictment for burglary, the prisoner may be convicted of *an attempt* to commit the crime charged in it.

Evidence competent upon the question of guilty or not guilty of the burglary charged, is competent to prove the attempt to commit it.

Where the proof showed that, having reconnoitered the premises, the prisoner designed and agreed with the witness that at about 1 o'clock of a particular night they would commit a burglary, by entering the store of B.; that in pursuance of such design and agreement, at about the hour of one they

The People *v.* Lawton.

went to the store, through the alley in its rear; that the prisoner carried or caused to be carried there, a set of burglar's tools, to aid them in commiting the burglary; that when they arrived, the prisoner suggested that none of the tools were strong enough to enable them to force an entrance; that they then concluded to enter a blacksmith's shop close by, for the purpose of getting a crowbar, or some other tool, with which to break into the store; and that before they entered the shop, an alarm was given, and they were interrupted, and were prevented from executing their intended purpose; not, however, abandoning their design; *Held* that this evidence was sufficient to support a conviction for an *attempt* to commit a burglary.

The cases all concur in saying that, in order to constitute an attempt to commit a crime, there must appear to have been more than the mere design or intention to commit the offense. There must have been some ineffectual act or acts towards its accomplishment. But none of them tend to establish that acts analogous to those proved in this case do not constitute an attempt. *Per* FOSTER, J.

An attempt may be immediate—an assault, for instance; but it very commonly means a *remote* effort, or indirect measure, taken with intent to effect an object.

CERTIORARI to review the trial and conviction of the prisoner, under an indictment against him jointly with one Thomas Meany, for burglary.

The prisoner and Meany were indicted for burglary in breaking in the store of one William Burk, in Syracuse, in which divers goods and merchandise were kept for use and sale, with intent burglariously to steal the same, &c.; to which he pleaded not guilty. He was tried separately for the offense, at a court of sessions held in and for the county of Onondaga on the 19th of December, 1866, and the jury rendered a verdict against him of guilty *of an attempt* to commit the crime and felony charged against him in the indictment. Sentence was suspended, to the end that the questions decided there might be reviewed before this court.

On the trial the principal witness on the part of the people was Meany, his accomplice, who testified that a day or two previous to the alleged burglary, the prisoner informed him that he had a set of burglar's tools, and he borrowed of the witness a carpet-bag in which to put

them; that he furnished the bag to the prisoner, on the day previous to the night in question; that in the fore-part of that evening it was agreed between the prisoner and the witness that they should break and enter the store of Burk that night, at about 1 o'clock, and that the prisoner informed the witness that another person, whose name was not mentioned, would assist them in doing so; that in pursuance of said agreement, they reconnoitered the store and premises of Burk, and afterwards, at about 1 o'clock, the three persons were together upon the canal bridge, not far from Burk's store; that the prisoner asked their associate "where the things were," and the reply was that they were all right. The prisoner said, "I hope you have been careful to put *that* where it will not upset," and he again replied they were all right. The witness told the prisoner they had better move on, if they were going to do anything about it, and they then came across the bridge, towards the alley in rear of the store; that when they came across the bridge there were lights in a dwelling-house, and the prisoner requested them to hold on until the light was out, and while waiting for the light to be put out, the prisoner said he had nothing strong enough to force an entrance into any of those stores, and he would have to go and get something; that the witness told him he should have attended to that before, to which the prisoner replied, no matter, there was a blacksmith's shop there, and they could go in and get something; that they got to the front of the blacksmith's shop, looked up and down the street, and went into the alley by the side of the shop; that they had just made up their minds to go into the shop, and some one whistled; that the witness asked the prisoner what that was; that the prisoner jerked the witness' sleeves, and then stooped and ran along the alley, and the witness followed him; that they ran around the shop, and the prisoner got over a fence, but the witness was stopped by it, and was taken by a

police officer.   That no entry was made into the store, ∨
and no force was applied to it in order to enter it.   The
carpet-bag was found the next day, in the box of a coal
wagon standing in the alley in the rear of Burk's store.
It contained a dark lantern, a bottle full of powder, a piece
of candle, a jimmy, nippers, one punch, one spring punch
capped with leather, one pair of forceps, and a bolt; the
jimmy being an instrument to pry open doors, windows
and drawers.   He also testified that they were going to
open the shop to get a crowbar or something to open the
store with.

There was other testimony, corroborative of some of the
statements of the witness, and which showed the defend-
ant and witness together, on that evening, not far from
the premises in question, and while they were reconnoi-
tering the store; but the proof of the arrangement to break
open the store, and of what was done by them at the time
they went there for that purpose, rested entirely upon the
testimony of Meany.   The prisoner was not arrested there,
but afterwards, at his lodgings.   Other witnesses were
called and sworn, as well in behalf of the people as of the
prisoner.

The court, at the close of the testimony in behalf of the
people, and at the request of the counsel for the prisoner,
ruled and decided that the evidence did not support the
indictment for burglary.

When the evidence was closed, the counsel for the pris-
oner asked the court to direct a verdict of not guilty;
*first*, because, under an indictment for burglary, the pris-
oner could not be convicted of an *attempt* to commit burg-
lary; *second*, because nothing had been done in this case,
according to the testimony, which, within the meaning of
the statute, constituted an attempt.   The court refused so
to direct, and the prisoner's counsel excepted.

The prisoner's counsel also asked the court to charge

the jury that they must render a verdict of not guilty; for that, independent of the testimony of Meany, there was no evidence of the commission of any offense, or of any attempt to commit the offense charged in the indictment; the court refused so to charge, and the prisoner's counsel excepted. The court then charged the jury that if they found there was no evidence of any attempt to commit the crime charged, except that of Meany, who was an accomplice therein, still if they were satisfied he told the truth, they might convict, without any corroborating evidence.

*F. Hiscock,* for the defendant.

*L. W. Hall,* (district-attorney,) for the people.

FOSTER, J. The court below was undoubtedly right in refusing to charge that the prisoner could not be convicted upon the testimony of Meany, alone, and in charging the contrary thereto; for although the testimony of accomplices, uncorroborated, should be received with great caution, there cannot be any question that if the jury find a verdict of guilty upon such evidence, the court cannot for that reason set it aside. This question was fully discussed by the court, Beardsley, J., in *The People* v. *Costello,* (1 Denio, 83,) and the rule there held was as above stated.

The same rule was laid down in *Haskins* v. *The People,* per Bowen, J., (16 *N. Y. Rep.* 351, 352,) all the judges concurring; and it was reiterated by the Court of Appeals, in *The People* v. *Dyle,* (21 *N. Y. Rep.* 578.) It was followed in *Wixson* v. *The People,* (5 *Park. Crim. Rep.* 120,) by the Supreme Court; and the same rule is laid down in 1 *Greenl. Ev.* § 380, and 1 *Chit. Crim. Law,* 604.

The court was also right in holding that, under the indictment in this case, the prisoner might be found guilty of *an attempt* to commit the burglary charged in it. It is not analogous to the case of *Dedieu* v. *The People,* (22 *N. Y.*

*Rep.* 178,) which is cited by the prisoner's counsel. In that case the prisoner was indicted for arson in the first degree, for setting fire to an inhabited dwelling-house, in the night-time, and the offense proved was, that the fire was set to a packing box, two trunks and a bed of his own, in the room in which he lived; that the box and trunks contained boots and shoes belonging to him; and the evidence showed that the design was to burn the personal property in the box and trunks; that no part of the property was burned at all; and it was proved that he had an insurance upon the boots, shoes, bedding, &c., in his room. The case showed that there was no arson, or attempt to commit arson, as charged in the indictment; but the prisoner was convicted of arson, which, though of a lesser grade, was in all respects of an entirely different character. And though the case came within the letter of the statute, yet it was not within the spirit of it; and being a criminal case, the court, in setting aside the conviction, acted upon the well known principle, that it could not have been within the intention of the legislature when they passed the act.

But how is it in the case before us? The section in question is as follows: "Upon any indictment for any offense, consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offense, in the degree charged in the indictment, and may find such accused person guilty of any degree of such offense inferior to that charged in the indictment, *or of an attempt to commit such offense.*" (2 *R. S.* 202, § 27.)

No objection was made, on the trial, that the evidence was not competent, as not tending to prove the offense of burglary charged in the indictment, and it was doubtless all competent for that purpose. But when the evidence was closed, the question was, first, whether it was sufficient to warrant a conviction for the burglary, and the court held it was not; and yet it did tend to prove it, so

far as it went; and being competent evidence upon the question of guilty or not guilty of the burglary charged, it was competent to prove the attempt to commit it; and if, under such an indictment, the prisoner could not, if the testimony warranted it, be convicted of the attempt, that portion of the section must have a meaning so restricted as to render it worthless.

As I have stated, the proof was all competent; it all related to the offense charged; and if the legislature intended that, upon a trial for an offense, the prisoner might be convicted of an attempt to commit it, it seems to me this is such a case. There could have been no surprise on the part of the prisoner at the testimony given, for no objection was made to it; and when it was all in, the question was, did it prove the offense charged, or only an attempt to commit that offense; or was it insufficient to convict him of either of them.

My opinion also is, that the verdict was supported by the evidence; that it showed an *attempt* to commit the offense, within the meaning of the statute, which is as follows: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt *shall do any act towards the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or interrupted in executing the same,* upon conviction thereof, shall," &c.

In the determination of this question, we must assume that the testimony of Meany was true; and it established that having reconnoitered the premises, the prisoner designed and agreed with the witness that at about one o'clock of that night they would commit a burglary, by entering the store of Burk; that in pursuance of such design and agreement, at about the hour of one, they went to the store, through the alley in its rear. That the prisoner carried or caused to be carried there, the set of burglars' tools, and that they were taken there to aid them in committing the burglary. That when they arrived, the

The People *v*. Lawton.

prisoner suggested that none of the tools were strong enough to enable them to force an entrance; that they then concluded to enter a blacksmith's shop close by, for the purpose of getting a crowbar, or some other tool, with which to break into the store, and that before they entered the shop an alarm was given, and they were intercepted and were prevented from executing their intended purpose. And it is manifest from the evidence, that they did not at any time before such interruption abandon their design of entering the store, and that all they had done and were doing was in furtherance of that object. It is claimed on the part of the prisoner, that when he and the witness were intercepted, they were not engaged in the commission of the offense charged, but of another and distinct burglary—that of entering into the shop. It is true that they were then about to break and enter the shop, but such breaking and entering was deemed by them to be necessary to enable them to commit the burglary in question, that being the only burglary which they had designed to commit; and the act of getting the proper instruments, whether from the blacksmith's shop or elsewhere, was as much an act to enable them to commit the offense with which they were charged, as it would have been if they had taken a crowbar for the purpose, which they had happened to find beside the door of the store ; and it cannot make any difference, whether they were interrupted at the time they were, or whether it had happened after they had obtained the crowbar, and had arrived with it at the door of the store in question. If there was anything in the case tending to prove that the design to enter the store had been abandoned, before they were interrupted, the verdict could not be supported; but as it is, it seems to me that every act they did was towards accomplishing their original intent. They therefore attempted the burglary; they did acts towards its commission, and they were interrupted and prevented from accomplishing it. None of the author-

ities cited by the counsel for the prisoner are in conflict with the conclusion to which I have arrived. They all concur in saying that in order to constitute the attempt, there must appear to have been more than the mere design or intention to commit the offense. There must have been some ineffectual act or acts towards its accomplishment. (*Wharton's Criminal Law,* § 2702. 6 *Grattan,* 706. 5 *Cushing,* 367.) But none of them tend to establish that acts analogous to those proved in this case do not constitute an attempt. The only case which appears in the least to conflict with it is the *nisi prius* case of *Regina* v. *Meredith,* (8 *Car. & Payne,* 589,) where Lord Abinger said he thought some illegal act should be proved, to constitute the offense; and illustrated the suggestion by supposing that when a man was indicted for an attempt to have connection with a female child between the ages of ten and twelve years, and the proof showed that he took his horse and rode to the place where the girl was, he thought such an act would not constitute an attempt. I think that the riding of the horse would not be an act towards the commission of the offense, while the taking of burglars' tools and crowbars to the place designed to be broken open would be acts done towards its accomplishment.

In the *Commonwealth* v. *Clark,* (6 *Gratton,* 675,) the court laid down the rule, " that there may be an attempt to commit an offense without the *completion of any act* towards its accomplishment. In the commission of an offense, there will be *preparatory* or *incipient* acts. Of these there must be a first one. If the *first* be merely attempted, it will not constitute an offense, but if it be completed, it will." And in *Commonwealth* v. *Uhl,* (6 *Grattan,* 706,) the court say : " The overt act done in the attempt to commit the offense need not be the last proximate act prior to the consummation of the felony attempted to be perpetrated." But I think the decision in the case of *The People* v. *Bush,* (4 *Hill,* 133,) covers the whole question, and is an authority in

support of the verdict.    The indictment against Bush was under the section of the statute now in question, and charged him with an attempt to commit the crime of arson, for the purpose of burning the barn of one Hildon.    The proof showed that Bush requested one Kinney to fire the barn, and offered him a reward for doing the act, and furnished him with a match for that purpose.    But Kinney did not fire the barn, and did not intend to do so.    Bush was convicted, and upon certiorari to review the proceedings, the court held that the conviction was right.    At page 135, the court, Cowen, J., says : " The course taken to commit the arson by the hand of Kinney was the same thing, in legal effect, as if Bush had intended to set the fire personally, and had taken steps preparatory to that end."

An attempt may be immediate—an assault, for instance ; but it very commonly means a *remote* effort, or indirect measure, taken with intent to effect an object.    And see 1 *Russell on Crimes*, 49, (*Am. ed. of* 1836,) where he speaks of solicitation to commit a crime, as an attempt.

The case should be remitted to the court of sessions of Onondaga county, with directions to proceed and render judgment against the prisoner, in accordance with the provisions of part 4, chapter 1, title 7, section 3 of the Revised Statutes.

BACON and MULLIN, JJ., concurred.

MORGAN, J., expressed no opinion.

[ONONDAGA GENERAL TERM, June 25, 1867. *Morgan, Bacon, Foster* and *Mullin,* Justices.]