THE STATE v. CRAFT *et al.*, *Appellants.*

**Criminal Law**: ATTEMPT TO STEAL: ATTEMPT TO ROB. The defendants having been convicted of an attempt to commit larceny; *Held*, that the judgment must be reversed, the evidence showing an attempt to commit robbery rather than larceny.

*Appeal from Dade Circuit Court.*—HON. J. D. PARKINSON, Judge.

REVERSED.

Defendants were convicted on the following count of the indictment: The grand jurors aforesaid, upon their oaths aforesaid, do further find and present that Frank Craft and Box Mitchell late of said Dade county, on, etc., at, etc., unlawfully, willfully and feloniously did attempt to feloniously steal, take and carry away the sum of $150, the money and property of one C. Owing, with the intent feloniously to convert the same to their own use, and then and there, in said attempt and toward the commission of said larceny and felony, the said Frank Craft and Box Mitchell, unlawfully, willfully and feloniously did go to the residence of the said C. Owing with full intent and design to carry out and complete the felony as aforesaid, but were prevented from completing said felony by the light in the house where said money was, and the dog at said house,

which gave the alarm by barking at said Craft and Mitchell; so the grand jurors aforesaid, do say the said Frank Craft and Box Mitchell, then and there, in the manner and form aforesaid, unlawfully, willfully and feloniously, did attempt feloniously to steal, take and carry away the sum of $150, the money of one C. Owing, with the intent to convert the same to their own use, contrary to the form of the statute, etc., and against the peace and dignity of the State of Missouri.

*D. A. De Armand* for appellants.

1. Assuming the State's evidence to be true, nothing was done by defendants beyond forming an intent and making preparation to obtain Mrs. Owing's money. This is not an "attempt," and does not amount to an offense under our law. *State v. Painter*, 67 Mo. 84; *Com. v. McDonald*, 5 Cush. 365; 1 Bishop Crim. Law, title "Attempt."

2. There was no evidence of an attempt or even an intent to commit larceny. According to Rhodes' testimony, the intention was to rob, not to commit larceny.

*J. L. Smith*, Attorney-General, for the State.

The acts of the defendants constituted an attempt. *State v. Montgomery*, 63 Mo. 296; 2 Wharton Crim. Law, (7 Ed.) § 2686, *et seq*; 1 Bishop Crim. Law, (5 Ed.) § 752; *Com. v. Jacobs*, 9 Allen 274; *Kunkle v. State*, 32 Ind. 220, 232; *Com. v. McDonald*, 5 Cush. 365; *State v. Wilson*, 30 Conn. 500; *State v. Elick*, 7 Jones (N. C.) 68; 2 Wharton Crim. Law, (7 Ed.) §§ 2699, 2700, 2693; *Lewis v. State*, 35 Ala. 380; *People v. Lawson*, 56 Barb. 126; *Reg. v. McCann*, 28 Up. Can., Q. B. 517.

SHERWOOD, C. J.—The defendants were indicted for, and convicted of, an attempted theft, but were acquitted on two other counts of the indictment, the one for attempted robbery, the other for attempted burglary. The

section of the statute on which the indictment is based, is this: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof, shall, in cases where no provision is made by law for the punishment for such attempt, be punished," etc. 1 R. S. 1879, §. 1645.

The only point for our determination is the sufficiency of the evidence to sustain the conviction. That evidence discloses a design by defendants to commit burglary in the first or second degree, and to commit robbery, for Rhodes states that they "went there with intention of going into the house and getting $150 belong to Mrs. J. C. Owing." And he further states, on being re-called: "We was to get into the house, and one was to catch the old lady, and put something over the old lady's head, so she could not make a noise, and hold her, and the other was to get the trunk and carry it out or break it open in the house." Thus establishing an intention to commit a crime which, if committed, would have been robbery in the first degree. R. S. 1879, § 1302. Rhodes, who had no intention to perpetrate a crime, but whose purpose was to "catch" the defendants, further states: "Craft and Mitchell and I went on to Owing's; we went over and got up to the barn, and the dog barked in the yard, and a light flashed up all of a sudden in the house, and we suspicioned some man person was in the house, and we didn't know whether to go in or not. Craft said he'd go in and kill the dog, and went in and shot at him, and came back, and said he had shot him, and that he believed he heard some one whisper, and thought there was a man person in the house. We then walked about one hundred yards away, or so, and stopped and talked about going back. Craft said he didn't believe it would pay to go back, that he thought there was some man person in the house. He told me to go back and watch

round and see if there was any person there. Then he said he thought I'd better not go, that I might get shot; that he was going to Stockton to court and would get some chloroform and we'd chloroform the house the next night." The above is the substance of the evidence offered by the prosecution as to the alleged attempt; and the question arising upon the evidence thus adduced, is whether the act done by defendants amounts to an attempt to commit the crime of which they were convicted.

In the view we take of this case it is not regarded absolutely necessary to its determination to discuss what act it is which properly could be deemed an attempt within the purview of the statute cited. Perhaps it will be found when the question shall present itself in such shape as to require and receive that extended discussion which the importance of the subject evidently demands, that the circumstances of each particular case will have much to do in determining whether an act or a series of acts should be held a violation of the section before us. That section has been on our statute books since 1835, (Laws of that year, p. 211, § 1,) but this is the first instance which has occurred, it is believed, in this State, where a construction of the section has been asked. The section in question is presumably derived from a like statute in New York, and should we follow the rulings made in that state upon the statute, no great difficulty, perhaps, would be experienced in coming to a conclusion favorable to the views advanced on the part of the prosecution as to what constitutes an attempt under statutory provisions. For in that state it has been held that where the prisoner solicited one K. to set fire to a barn and gave him materials for the purpose, that this was sufficient to warrant a conviction, though the prisoner did not mean to be present at the commission of the offense, and K. never intended to commit it. *The People v. Bush*, 4 Hill 133. And in the more recent case of the *People v. Lawton*, 56 Barb. 126, where the proof showed that having reconnoitered the premises, the prisoner de-

signed and agreed with the witness that at about one o'clock of a particular night they would commit a burglary, by entering the store of B.; that in pursuance of such design and agreement, at about the designated hour, they went to the store, through the alley in its rear; that the prisoner carried, or caused to be carried there, a set of burglar's tools to aid them in the commission of the burglary; that when they arrived, the prisoner suggested that none of the tools were strong enough to enable them to force an entrance; that they then concluded to enter a blacksmith's shop close by, for the purpose of getting a crowbar or some other tool, with which to break into the store, but before entering the shop, an alarm being given, they were interrupted and prevented from executing their intended purpose, without, however, abandoning it; it was held that sufficient evidence had been introduced to support a conviction for an attempt to commit a burglary.

But, as before stated, it not being deemed absolutely essential in this case to determine what is, under the statute, an attempt to commit a crime, we shall refrain from determining the point, and this is our reason for thus refraining: We might concede that an attempt had been made, and an act had been done toward the commission of an offense, but still this concession would not warrant the conviction of the defendants on the third count of the indictment; for the evidence unmistakably shows a design to obtain the money by robbery, and not by larceny; and that if the act of shooting the dog can be regarded as an attempt, it was an attempt to commit the former, and not the latter crime. Had not Rhodes been re-called, there would have been more ground for saying that the money was to be obtained by larceny, coupled, perhaps, with burglary; but his testimony after retaking the stand, precluded any idea of an intended larcenous taking, and especially that the dog was shot as an act in furtherance of such taking. On the contrary, it very clearly appears that the idea of chloroforming the house the next night,

from which perhaps intended larceny might be inferred, did not occur to Craft until he had shot the dog, and a retreat had been made from the immediate neighborhood of the house. It is impossible, therefore, to say that the defendants were properly convicted of an attempt to commit a larceny, in consequence of the act of shooting the dog. To say so would be equivalent to saying that a prior act was done in furtherance of a subsequent formed design. The judgment must, therefore, be reversed and the prisoners discharged. NAPTON, J., absent; HOUGH and HENRY, JJ., concur in the result; NORTON, J., dissents.