# WHEELING.

### STATE *v.* BALLER.

Submitted June 19, 1885.—Decided June 27, 1885.

An indictment alleges, that C. B. unlawfully furnished one A.R. for the use of P. E. money to unlawfully induce P. E. to absent himself from the circuit court of the county at a certain term, to which he, P. E., had been summoned as a witness against said C. B. in a trial on an indictment against said C. B. then pending in said court, whereby the said C. B. attempted to obstruct and impede the administration of justice. HELD :

This indictment was fatally defective in not ʲalleging, that A. R. paid or offered to pay said money to the witness P. E. to induce him to absent himself as such witness at said time from the circuit court. Without this the act done by the de‿

fendant is not of such a nature as to constitute an attempt to commit the offence mentioned in the indictment; and therefore on motion of the defendant the court ought to have quashed this indictment.  (. 102.)

Green, Judge, furnishes the following statement of the case:

On February 15, 1883, the grand jury of Wood county found the following indictment against Caroline Baller:

"State of West Virginia, Wood County, to wit:

"The grand jurors of the State of West Virginia in and for the body of the county of Wood and now attending the said court, upon their oaths present that Caroline Baller, on the first day of January, A. D. 1883, in the said county of Wood, did unlawfully furnish to one John A. Ran, for the use of Peter Earl, and amount of money, to-wit, the sum of $3.00 to unlawfully induce the said Peter Earl, to absent himself from the circuit court of said county at the February term, 1883, of said court, to which said term he, the said Peter Earl, had been subpœnaed as a witness on behalf of the State of West Virginia against the said Caroline Baller in a case pending in said court upon an indictment for misdemeanor found by the grand jury of said county against the said Caroline Baller at the November term of said court, 1882, whereby the said Caroline Baller attempted to obstruct and impede the administration of justice in the said circuit court of Wood county contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

On July 19, 1883, the defendant moved the court to quash this indictment, which motion the court overruled; and thereupon she pleaded not guilty, and issue was joined.   On July 26, 1883, this issue was tried by a jury, who found the defendant guilty as charged in this indictment, and on August 6, 1883, the defendant moved the court to arrest the judgment, which motion the court overruled and rendered judgment against the defendant for $25.00, the fine assessed by the court and costs, and that the defendant be confined in the jail of Wood county for one hour, and until this fine and costs were paid.   The court stayed execution of this judgment on the defendant's motion for thirty days on her.

giving bond and security in the penalty of $300.00 as required, which bond she gave.

From this judgment the defendant obtained a writ of error.

*Leonard & Caldwell* for plaintiff in error.

*Alfred Caldwell*, Attorney-General, for the State.

The question in this case is : Is the indictment sufficient?

The indictment is for attempting to prevent the attendance of a witness summoned to give evidence before the circuit court of Wood county, whereby the accused attempted to obstruct and impede the administration of justice in said court.

The attempted offence while a contempt of court is also indictable at common law. (Hawk. b. 1, c. 21, s. 15 ; *Comm.* v. *Reynolds*, 14 Gray 87.) The attempt is a misdemeanor. (*Rex* v. *Higgins*, 2 East 8 ; Whar. Am. Cr. Law 766, 767, and note b.) In England it has been held that merely soliciting another to commit a crime is an attempt. (1 Russ. Crimes 49.) In Virginia, to constitute an attempt, an actual ineffectual deed done in pursuance of and in furtherence of a design to commit the offence is required. (*Uhl's Case*, 6 Grat. 672.) The overt act need not be the last proximate act prior to the consummation of the offence attempted. (*Id.*) See also *Clark's Case*, 6 Grat. 675, and *Nutter's Case*, 8 Grat. 699.

The indictment in this case is in substance that recommended in Archb. Cr. Pr. & Pl. See 1 Whar. Cr. Law (8th ed.) 2 Chit. Cr. Law 234, 235, and 2 Archb. Cr. Pr. & Pl. 897,) and distinctly alleges the overt act, decided in Virginia to be necessary, and further that the money was furnished to unlawfully induce Peter Earl to absent himself from the court, he being a duly subpœnaed witness. If Earl did so absent himself, there can be no doubt that the effect would have been to obstruct and impede the administration of justice. The money was furnished for the purpose of unlawfully inducing the absence of the witness, and the indictment not only shows an overt act done, but also the unlawful intent with which it was done. From her acts and intention as alleged in the indictment the conclusion that she *thereby* attempted to obstruct and impede the administration of justice in the circuit court of Wood county is legitimate and proper.

The ways in which such obstruction could be attempted are as varied as human actions, but one way attempted it is insisted is properly pleaded in the indictment.

Green, Judge:

The only question involved in this case is : Was the in-
dictment in this case good ? The only defect claimed by the
counsel for the plaintiff in error is, that it charges that the
defendant below did unlawfully furnish to Ran for the use of
Earl $3.00 to unlawfully induce Earl to absent himself from
the circuit court of said county at the February term, 1883, as
a witness on behalf of the State in the trial of an indictment
against the defendant below, whereby she the defendant be-
low *attempted* to obstruct the administration of justice.   It is
claimed by the counsel for the plaintiff in error, that the facts
alleged in this indictment are insufficient to show, that the
defendant below did attempt to obstruct the administration
of justice, as the giving by her of money to a third party to
be given by him to a witness to prevent his attendance as a
witness on the trial of a case does not amount legally to an
attempt to obstruct the administration of justice, unless this
third party gave or tendered this money to the witness or in
some other way attempted to induce this witness to absent
himself as a witness in that case ; and that the indictment
was therefore fatally defective, because there was no allega-
tion that any inducement was presented to the witness to
absent himself as a witness on the trial of this case.   The
question to be decided is : Was such an allegation necessary
to complete the offence charged in the indictment, an attempt
to obstruct and impede the administration of justice ?

In the case of *Cunningham* v. *The State*, 44 Miss. 701 the
court say: "The doctrine of attempt to commit a substantive
crime is one of the most important and at the same time
most intricate titles of the criminal law.   There is no title,
indeed, less understood by the courts, or more obscure in
the text-books than that of attempts.   There must be an at-
tempt to commit a crime, and an act towards its consumma-
tion.   So long as the act rests in bare intention, it is not pun-
ishable ; but immediately when an act is done, the law judges
not only the act done but of the intent, with which it was
done ; and if accompanied with an unlawful and malicious
intent, though the act itself would otherwise have been inno-
cent, the intent being criminal and punishable."

An attempt to obstruct or impede the administration fo

justice by inducing a witness to absent himself from court is unquestionably a misdemeanor. It was a misdemeanor at common law. (Hawkins' Pleas of the Crown Book 1 chap. 21 sec. 15 p. 90 ; *Commonwealth* v. *Reynolds*, 14 Gray 89 ; *State* v. *Keys*, 8 Vt. 57; *State* v. *Carpenter*, 20 Vt. 9.) And it was declared a misdemeanor by the Code of W. Va. chap. 147 sec. 30 p. 691. This provision in our Code was amended on March 23, 1882, sec. 1, ch. 134; and by this amendment the punishment of either obstructing or impeding the administration of justice in any court or the attempt so to do was fixed at a fine of not less than $25.00 nor more than $200.00 and imprisonment in the county jail not exceeding six months.

As before said, it is obvious, that an indictable attempt to commit this or any other crime must consist of something more than a mere intention to commit the crime. The very word used in the above statute, which declares an *attempt* to obstruct the administration of justice a misdemeanor, implies, that this misdemeanor can be committed only by some act intended to result in the crime. An indictable attempt is therefore such an intentional preparatory act as will apparently result, if not extrinsically hindered, in a crime, which it was designed to effect. This is the definition given by Wharton in his Commercial Law (eighth edition) chapter eight, section one hundred and seventy-three. The great difficulty is to determine, what must be the nature of these preliminary acts and the nature of their connection with the intended crime, so as to make them an indictable attempt to commit such crime. These preliminary acts, if connected with the intended crime only as a *condition* as distinguished from a *cause*, can never according to the better authorities constitute an indictable attempt to commit such crime. While it is often not difficult to distinguish a *condition* from a *cause*, yet they frequently approximate so closely, that it becomes exceedingly difficult to distinguish them. By *cause* is meant that *condition* which determines the final result. As illustrating the difference between a *cause* and a condition I will put the case of the death of a child proceeding from suffocation produced by forcing moss into the child's throat. This would still be considered the *cause*, as the swelling arose

from the forcing of the moss into the child's throat, though the immediate occasion of the child's death was the swelling up of the passages of the throat causing suffocation. In this case the swelling of the throat, which occasioned the suffocation, was the *condition* of the death, while the *cause* of it was the forcing of the moss into the throat. This illustration is found in Wharton's Criminal Law (8th Ed.) Book 1, sec. 154, p. 184. In the same section is the following illustration : " Iron is dug from a mine, is melted in a furnace, is shapen in a factory, is sold as a weapon by a tradesman, is used to inflict a fatal wound by an assassin. Now the mining, the melting, the shaping, the selling are all *conditions* of the murder, without which it could not in the line, in which it was effected, have taken place ; but none of these acts is a *cause* of the murder, unless the particular act was done in concert with the murderer, to aid him in effecting his purpose."

Perhaps we can not get a clearer conception of the nature of these preliminary acts and of the character of their connection with the intended crime, which made them an indictable attempt to commit such crime, than by referring to some cases, which have either actually arisen, or which have been stated as illustrations by eminent judges in deciding cases. I do not say, that from these cases any rule can be drawn, which would lead us to certain results in many cases, which might arise ; nor do I say, that these cases are all of them reconcilable in principle. Still they will aid us in making correct conclusions in this case ; and they will illustrate the inherent difficulty and the great obscurity, which arises, when we undertake to determine, whether certain acts are or are not indictable attempts to commit a crime. An indictment lies for attempting to pursuade a witness not to appear and give evidence. (*Rex* v. *Lanley*, 2 Strange 904 ; *State* v. *Keyes*, 8 Vt. 57 ; *State* v. *Carpenter*, 20 Vt. 9). An indictment lies, where a party sends a letter to another offering to bribe a minister of state, or where one sends a letter denouncing another with the expressed intention of provoking him to send a challenge to fight. In either case the sending of such letter was a step towards the misdemeanor intended to be accomplished, the corrept abuse of a minister of his official position or the sending of a challenge. The

sending of such letter is an indictable attempt to cause the commission of such misdemeanor. (*King* v. *Philips*, 6 East 464.) It is an indictable offence to solicit a servant to steal his master's goods, though they were not stolen nor any act done except the soliciting. Such soliciting is an indictable attempt to cause larceny to be committed. (*King* v. *Higgins*, 2 East 5.) If a man intends to commit murder, the walking to the place, where he intends to commit it, would not be a sufficient act to make it an indictable offence. (Irwin. C J. in *Rex* v. *Roberts*, 33 Eng. Law & Eq. 539; Dears 553.) So if a man intended to carnally abuse a child and was to take his horse and ride to the place, where the child was, that would be a step towards the commission of this offence, but would not be indictable. (Lord Abinger in *Rex* v. *Meredith*, 8 C. & P. 589.) In the two last cases supposed the acts done stood in relation to the crimes intended to be committed as *conditions* not as *causes;* and for that reason, I presume, it was held that they were not indictable attempts. So too and for a like reason the buying of a box of lucifer matches with intent to set fire to a house is not an indictable offence. (Pollock C. B. in *Rex* v. *Taylor*, 1 F. & F. 511). An attempt to produce a miscarriage is indictable, though it turn out that the woman was not actually pregnant. (*Rex* v. *Goodall*, 2 Cox, C. C. 40.)

In some cases acts preparatory to the commission of a crime are themselves a crime and indictable as such, and not as an attempt to commit the crime. Decisions based upon the doing of such acts, as constitute a substantial crime in themselves, should be distinguished from those decisions which hold certain acts to be crimes, only on the ground that they are attempts to commit crimes. As examples of cases, where the doing of certain preliminary acts, which look to the commission of certain crimes, are regarded *per se* as indictable, as substantive crimes and not properly as attempts to commit the future crime contemplated, I may refer to the carrying of concealed weapons. Whether or not carried with the specific purpose of being used to assail a particular individual this is a substantive crime and should be indicted as in itself a crime and not as an attempt to commit a crime, even though they were carried

with the specific intent of assailing a certain person. So the procuring of dies, wherewith to counterfeit, is an indictable offence *per se* and should be indicted as an independent misdemeanor and not as an attempt to counterfeit. It is on this ground that the conclusion reached in *Rex* v. *Roberts*, 33 Eng. Law & Eq. 539 (Dears 553) can be sustained.

It is some times difficult to determine, whether the facts in a particular case constitute *per se* a substantive crime or only an attempt to commit a crime. I shall not undertake to lay down any rules by which the one may be distinguished from the other. And some of the cases, which have been or may be put as examples in this opinion, may constitute substantive crimes and ought not perhaps for that reason to be regarded as illustrations of attempts to commit crimes. I regard it in this case as sufficient to call attention to the existence of a difference between such substantive offences and attempts to commit crime. This difference will aid in some instances in reconciling cases with each other, which may at first sight appear to be in conflict.

I will state a few additional cases, which have arisen, and which throw some light on the questions arising in this case. Thus it has been held, that it is not an indictable offence to have possession of forged bank-bills of the bank of A., no such bank in fact existing, with the intent to pass them as genuine bills. For this amounts to nothing but an intent to cheat; which at common law is not indictable. (*Commonwealth* v. *Moyer*, 2 Mass. 138.) If an indictment charged that A. " with force and arms unlawfully and wickedly did attempt to pick the pocket of one B. with intent then and there feloniously to steal, take and carry away the goods and chattels moneys and property of the said B.," it is fatally defective. (*Randolph* v. *Commonwealth*, 6 Searg. & R. 398.) This indictment was held fatally defective, because there can be no attempt to commit a crime without the doing of some act; and it is absolutely necessary for the indictment to state the act done, which is claimed to constitute the attempt, in order to give the accused an opportunity of disproving that he did the specific act alleged, and also to enable the court to determine, whether, what it is claimed he did, was an indictable offence. This decision seems to me to be obviously correct;

yet it was held in the *People* v. *Bush*, 4 Hill (N. Y.) 134, that
in an indictment for attempting to commit an offence the par-
ticular manner, in which the attempt was made, need not be
stated.   This, it seems to me, was not the only error com-
mitted by the court in that case.   The evidence in the case
was that the defendant requested one Kinney to set fire to
Sheldon's barn offering him a reward; that afterwards, un-
derstanding and believing Kinney would set fire to the barn,
the defendant gave him a match for the purpose, not mean-
ing to be present himself at the doing of the act.   It clearly
appeared, that Kinney never intended to commit the crime.
The court held that the attempt to commit arson was suffi-
ciently proven and the defendant properly convicted.   This
decision was based on the case of *King* v. *Higgins*, 2 East 5, be-
fore cited, where it was decided that the soliciting of one to
steal was itself a sufficient act to complete the offence of at-
tempting to steal.

There is no question but that solicitations to do certain
acts or commit certain crimes are indictable, as for instance,
if the object is to provoke the breach of public peace, as in
challenges to fight a duel or seditious addresses or the coun-
selling of the resistance of a judicial writ, or when the object
of the solicitation is to defeat public justice, as where perjury
is advised, or the escape of a prisoner is encouraged, or the
corruption of a public officer is sought.   But in these cases
these solicitations constitute at common law substantive
offences, which are *per se* punishable as misdemeanors, and
it is not as attempts to commit crimes that they are punish-
able.   Except in those few cases, in which the common law
made solicitation to do certain acts a substantive crime, it
seems to me that solicitation to commit a crime is generally
not a substantive crime and never can be properly an at-
tempt to commit a crime.   As I understand them, the great
mass of judicial decisions proceed on the assumption, that an
attempt to commit a crime, is such an intentional preliminary
act, as will apparently result in the usual course of natural
events, if not hindered by extraneous causes, in the commis-
sion of a deliberate crime.   But this can not be said of mere
advise given to another, which he is at full liberty to accept
or reject.

That this is a correct view may be deduced from *Smith* v. *Com.* 54 Pa. St. 209, where it was held, that a solicitation to commit adultery was not indictable at common law; *vide State* v. *Avery*, 7 Conn. 266. So it is held, that pursuading to consent to incest without any act done towards actual consummation is not an indictable attempt. (*Cox* v. *People*, 82 Ill. 191.) So a person, who induces one to sell him spirituous liquors, knowing that the seller is committing a misdemeanor, is not guilty of any indictable offence. (*Commowealth* v. *Willard*, 22 Pick. 476).

It is not however at all necessary in this case to decide in what cases a solicitation of another to commit a crime would be of itself a substantive crime at common law, or whether in any case such solicitation accompanied by no act tending to a specific crime could ever be an indictable attempt to commit such crime. But I will say, that when the crime, which one is solicited to commit, has for its object an interference with public justice, for instance, the procuring of a witness to absent himself from court so as to avoid testifying, when he had been summoned to testify, there can be no doubt that at common law such a solicitation would be a misdemeanor in itself. (*State* v. *Caldwell*, 2 Tyler 212; *People* v. *Washburne*, 10 Johns. 160; *Walsh* v. *People*, 65 Ill. 58; *Jackson* v. *State*, 43 Tex. 421; *State* v. *Keys*, 8 Vt. 57; *State* v. *Carpenter*, 20 Vt. 9; *State* v. *Early*, 3 Harr. 562; *Comm.* v. *Reynolds*, 14 Gray 87; *Martin* v. *State*, 28 Ala. 71).

In my judgment the fact, that in the case of *People* v. *Bush*, 4 Hill 134 it was proven in addition to the solicitation of the defendant to Kenny to burn the barn, that the defendant furnished to Kenny a box of matches, wherewith to burn the barn, did not add the least strength to the case made out by the State. If the defendant had bought a box of matches with the declared intent to burn the barn, that would not have made him guilty of an attempt to burn the barn, any more than the purchasing of a pistol with the intent of shooting a man would of itself make one guilty of an attempt to murder.

The case of *The People* v. *Lawton*, 56 Barb. 126 based principally upon the case in 4 Hill is in my judgment much less objectionable; and indeed it may probably be sustained on

sound principles. But it certainly stands very near the
boundary, when preparatory acts are to be held as indictable
attempts, and when they should not be so held. The proof
was, that the prisoner had reconnoitered the premises and
agreed with a witness at the trial that about ten o'clock of a
particular night they would commit a burglary by entering
the store of B.; that in pursuance of such design and agree-
ment at about the hour of one they went to the store through
an alley in its rear; that the prisoner carried or caused to be
carried there a set of burglars' tools to aid them in commit-
ting the burglary; that when they arrived the prisoner
suggested that none of the tools were strong enough to
enable them to force an entrance; that they then concluded
to enter a blacksmith shop close by for the purpose of getting
a crow-bar or some other tool, with which to break into the
store; and that before they entered the shop an alarm was
given, and they were interrupted and were prevented from
executing their intended purpose, not however abandoning
their design. The court held, that this evidence was suffic-
ient to support a conviction. The court say in their opinion
p. 134: All the cases cited "concur in saying that in order
to constitute the *attempt*, there must appear to have been
more than the design or intention to commit the offence.
There must have been some ineffectual act or acts toward its
accomplishment. (Wharton's Criminal Law sec. 2,702; 6
Grat. 706; 5 Cush. 367.) But none of them tend to establish
that acts analagous to those proved in this case do not consti-
tute an attempt: The only case which appears in the least
to conflict with it is the *nise prius* case of *Regina* v. *Meredith*,
8 Car. & Payne, 589, where Lord Abinger said, he thought
some illegal act should be proved, to constitute the offence;
and illustrated the suggestion by supposing that when a man
was indicted for an attempt to have connection with a female
child between the ages of ten and twelve years, and the
proof showed he took his horse and rode to the place, where
the girl was, he thought such an act would not constitute an
attempt. We think the riding of the horse would not be an
act towards the commission of the offence. While the taking
of burglars' tools and crow-bars to the place designed to be
broken open would be acts done towards its accomplishment."

This reasoning is far different from that in the *The People* v. *Burk*, 4 Hill, which the court afterwards say covers this case completely. Certainly we can not infer from this reasoning, that mere solicitations to commit a crime would make a party indictable for an attempt to commit such crime. But we could infer the very reverse. Yet this was the ground on which this case in 4 Hill was based. If it were a sound ground, why did the court in the case in 56 Barb. enquire into the character of the *preparatory acts*, if the simple fact, that the person had solicited or induced the witness to undertake the burglary, would *alone* have made the prisoner guilty of an attempt to commit this crime? It seems to me quite clear that advice given to another, which he is at full liberty to accept or reject, can not be regarded as an act , towards the commission of a crime. For such advice would not apparently result in the usual course of natural events in the commission of the crime, and if it would not, then, it seems to me, it can not legally be regarded as an act towards the commission of the crime. I am also inclined to think, that the taking of burglars' tools to a store with intent to break it open without using them in any manner can not legally be regarded as an attempt to commit burglary, because such act, it seems to me, is not one which would apparently result in the usual course of natural events in the commission of the burglary. But it seems to me a nice question, and I may be mistaken in my first impression.

The case is thus stated in the syllabus of *Uhl et als.* v. *The Commonwealth*, 6 Grat. 706 : "On an indictment against several for an attempt to burn a barn, held : That an attempt according to the true intent and meaning of the statute, can only be made by an actual, ineffectual deed done in pursuance of, and in furtherance of, the design to commit the offence. But if the parties combined to commit the offence, and they all assented to it, and a part of them only went to do the act, those who were absent knowing with what intent the others went to the place, and assenting to the same, are principals in the offence. The overt act done in the attempt to commit the offence, need not be the last proximate act prior to the commission of the fellony attempted to be perpetrated." The general court in that case delivered no

opinion and referred to no authorities. The syllabus is substantially the instruction given by the court below. The facts are not stated; and it therefore does not appear what, if any thing, was done towards the burning of the barn by those who went there for the purpose.

In the *Commonwealth* v. *Clark*, 6 Grat. 675, the general court decided, that, "An indictment for an attempt to commit an offence ought to allege some act done by the defendant, of such a nature as to constitute an attempt to commit the offence mentioned in the indictment." No opinion was delivered by the court, nor are the facts sufficiently stated to ascertain accurately what the indictment stated, which the general court quashed as insufficient. But as in the argument the New York cases were referred to, I presume the court by its decision intended to disapprove the case of *The People* v. *Bush*, 4 Hill, which was decided some six years before this Virginia case.

It is very difficult to deduce from the cases we have cited or from the reports of many other cases, which I have examined but not cited, any principle so clear as to enable us to determine with certainty, whether upon many states of facts in particular cases a party has or has not been guilty of an indictable attempt to commit a crime. But it seems to me that these cases show clearly enough certain general principles, which, when applied to the case actually before us, will enable us to reach a distinct conclusion. In the first place there can be no question but that to solicit or in any manner induce a witness to absent himself from a trial, in which the witness has been summoned to testify, is an indictable offence, though it is questionable whether in general the solicitation of a person to commit a crime is indictable, and it is clear that there are many crimes, to commit which the mere solicitation would not be an indictable offence. If therefore the defendant below had induced by giving money or by any other act attempted to induce the witness Earl to absent himself from the court on the trial of the indictment pending against the defendant below, whether this inducement came directly from the defendant below or indirectly through Ran, she would clearly have committed an indictable offence. But the allegations in the indictment utterly fail to show, that the

defendant Caroline Baller either directly or indirectly did anything to induce Earl, the witness, or which could have operated on his mind so as to induce him to absent himself from the court as a witness against the defendant. The allegation is, that she gave Ran money for the witness to induce the witness to absent himself from court as a witness against her. But as there is no allegation that Ran gave this money to the witness, or ever even saw the witness, it is obvious that the giving of money to Ran for the witness to induce him to absent himself from court could have had no tendency to produce such result, if the witness never received the money, and Ran never spoke to him on the subject; and there is no allegation in the indictment, that he ever did. If he had given this money to the witness to induce him to stay away from the court as a witness, then, whether he had staid away or not, she could have been indicted for obstructing and impeding or for attempting to obstruct and impede the administration of justice.

The authorities all agree, that on an indictment for attempting to commit any crime it is not necessary in any case to allege or prove, that the crime was actually committed; but the indictment in such case must specifically allege, what the crime is, which the accused is charged with attempting to commit or to procure to be committed. The indictment in this cese is entirely correct in this respect. It alleges, that the crime, the committing of which the defendant attempted to procure was "that Peter Earl should absent himself from the circuit court of Wood county at the February term 1883, to which said term he, the said Peter Earl, had been summoned as a witness on behalf of the State of West Virginia against said Caroline Baller, the defendant, in a case pending in said court upon an indictment for misdemeanor against the said Caroline Baller at the November term of said court 1882." This is an abundantly full and perfect description of the crime, which it is alleged the defendant Caroline Baller attempted to induce Peter Earl to commit. The indictment did not allege, that Peter ever committed this crime; and the authorities all show, that there was no necessity that it should. The great weight of authority and reason, as we have seen, lay it down that the preparatory acts done by the

accused, and which constitute the offence of attempting to procure the committing of a certain crime must be stated to have been actually done and must be proven to have been done as stated. It is true that in the *People* v. *Bush*, 4 Hill it was held, that in an indictment for attempting to commit an offence the particular facts, which constitute the attempt, need not be alleged. But this is contrary to both reason and authority. I have seen no other case, in which this has been held to be law. In *Randolph* v. *The Commonwealth*, 6 Serg. & R. it was decided otherwise; and the court said there were no precedents in support of such an indictment, as was held good in 4 Hill; and in the *Commonwealth* v. *Clark*, 6 Grat. 675 the position taken in 4 Hill was condemned, for the court expressly held: "the indictment for the attempt to commit an offence ought to allege some act done by the defendant of such a nature as to constitute an attempt to commit the offence mentioned in the indictment."

In the case before us the indictment does allege some act done by the defendant, which, it is claimed in argument, was "of such a nature as to constitute an attempt to commit the offence mentioned in the indictment." The act done by the defendant alleged in the indictment and claimed to be of such a nature as to constitute the attempt to get Peter Earl to commit the offence of absenting himself from attendance at the circuit court as a witness against the defendant was, that "she did unlawfully furnish one Ran with money for Peter Earl to induce him to commit said offence." And the question is: Was this of such a nature as to constitute an attempt to commit this offence? It seems to me clear both on reason and the authorities that it was not. The act done by the accused alleged in the indictment, it would seem obvious, can not be independent and unconnected in any manner with the acts, which, if done, would constitute the crime, which the accused is indicted as having attempted to commit or procure to be committed. The weight of authority, as I have stated, seem to show, that these acts done by the defendant and the acts constituting the crime attempted should be the cause of the other. But an examination of the cases, which we have cited, shows that there are some cases which have been decided, which seem to hold, that the acts done

by the defendant should be related to the acts, which constitute the crime attempted, not as crime necessarily, but that it will suffice, if the first is only a condition of the other. Of this character apparently are the cases of *The People* v. *Bush*, 4 Hill 134 and *The People* v. *Lawton*, 56 Barb. 126. But I have seen no case, which intimates, that the acts done by the accused need not be related to the acts constituting the attempted crime either as causes or as conditions.

In the case before us these acts done by the defendant are neither the cause nor a condition of the acts constituting the crime alleged to be attempted. A *condition* of any crime is the act or acts without which it would not have occurred. A cause is that *condition*, which determines the final result; or it may be defined as the *preponderating* condition. See Wharton's Criminal Law, eighth edition, Vol. 1, secs. 153 and 154. We have already given illustrations of causes and conditions, which will, I think, suffice to show, what is meant by these words. In *Washington* v. *The B. & O. R. R. Co.*, 17 W. Va. 197 *et seq.* many cases are cited, which when carefully considered will enable us to distinguish between what is properly called a cause and what should be called a condition merely. Though in these cases cited and in the case of *Washington* v. *The B. & O. R. R. Co.* there is no attempt to draw formally the distinction between a cause and a condition; and I do not know, that the term " condition " is used in any of the cases. Still in very many of them certain facts stated in them as not causes are still connected with the result; and this remote connection not being a cause is what we here call a condition. But it is apparent that the fact as alleged in the indictment, that " Caroline Baller," the defendant below, " on the 1st day of January, 1883, in said county of Wood did unlawfully furnish to one John A. Ran for the use of Peter Earl an amount of money, to wit, the sum of $3.00 to unlawfully induce the said Peter Earl to absent himself from the circuit court of said county at the February term 1883 of said court " could not possibly be either a cause or a condition of his, Peter Earl's, absenting himself from the circuit court of Wood at the February term, 1883, unless Ran gave these $3.00 to Earl to induce him to so absent himself, or saw said Earl and by his communication with him endeavored in some

manner to influence him to absent himself from said term of said court. If Ran never saw Earl, then of course the giving of this money by the defendant below for this alleged purpose could not possibly have operated in any manner to induce said Earl to absent himself from the said term of said court to avoid being a witness against the defendant. The two acts, the giving of the money by the defendant below for this illegal purpose and the absenting of Earl from this term of the circuit court, are entirely independent acts, and the one could not possibly influence the other, if Earl was in no manner communicated with ; and there is no allegation in the indictment that he was. In the absence of any such allegation the simple giving of this money by the accused to a third person for Earl is a fact of such a nature, that it could not possibly constitute an attempt to induce Earl to commit the offence of absenting himself from the circuit court as a witness against the accused. The indictment really amounts to nothing more than that the accused intended to induce Earl, a witness against her in an indictment there pending, not to appear as a witness against her and indicated this intention by a certain transaction, which she had with a third party. Of course she can not be indicted, as all the authorities show, for entertaining such intention, however immoral it may be regarded, and however clearly it may be shown that she did entertain it. This being the case the circuit court ought to have quashed this indictment when her counsel moved the court to quash it on July 19, 1883.

For this reason the judgment of the court below rendered on August 6, 1883, must be reversed and annulled ; and this court proceeding to render such judgment, as the court below ought to have rendered, must quash this indictment.

INDICTMENT QUASHED.

# WHEELING.

